# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF NORTH CAROLINA
# CHARLOTTE DIVISION
# 3:11-cv-146-RJC-DSC

| | |
|---|---|
| CHRISTINE RIVERS, ) ) Plaintiff, ) ) v. ) ) TIME WARNER CABLE INC., ) ) Defendant. ) ) | **ORDER** |

**THIS MATTER** comes before the Court on Defendant Time Warner Cable, Inc.'s ("Defendant") Motion for Summary Judgment, (Doc. No. 21), and Plaintiff Christine Rivers's ("Plaintiff") three motions to compel discovery, (Doc. Nos. 23; 24; 25). The Magistrate Judge issued Plaintiff a Roseboro Order on May 8, 2012, (Doc. No. 27), Plaintiff filed her response on May 22, 2012, (Doc. No. 29), and a surreply on June 15, 2012, (Doc. No. 31).

## I. BACKGROUND

Plaintiff was hired by Defendant on March 10, 2008 as a sales representative to sell Time Warner Cable data and cable services to businesses. (Doc. No. 22-2: Plaintiff's Dep. at 7-9). Plaintiff reported to Telemarketing Supervisor Emily Seebert ("Seebert"), who in turn reported to Telemarketing Manager Kelvin Bryant ("Bryant"). (Id. at 10). Each sales representative was expected to meet a monthly sales goal of $3,000 of installed services at the time of Plaintiff's hire and later $5,000. (Id. at 14-15). These expectations and the consequences for failing to meet them were spelled out in a Sales Incentive Plan ("Plan") distributed to all sales representatives. (Doc. No. 22-3: Seebert Aff., Ex. A at 9-16).

The Plan does not call for any penalty for an employee who attains 80% of this sales

goal, but failure to meet this quota requires an employee to be placed on a Performance Development Plan ("PDP"). (Doc. No. 22-3 at 4). If an employee is placed on a PDP twice in a twelve month period and still fails to attain 80% of the monthly sales goal, they are placed on a Performance Improvement Plan ("PIP"). (Id. at 4-5). Employees on a PIP are required to attain 90% of their monthly sales goal or face further discipline, including termination. (Id.).

Plaintiff missed her sales goal in eight of her first nine months of employment. (Id. at 3, 17). However, she did clear the 80% requirement in each of the eight months in which she failed to meet her sales goal. (Id. at 3). Seebert and Sales Coach Will Hartsell ("Hartsell") provided ongoing feedback to Plaintiff about her performance and tips on how to improve her numbers. (Id.). In late January 2009, Seebert and Hartsell met with Plaintiff for a performance evaluation where they gave Plaintiff a "Needs Improvement" rating. (Id.).

During this meeting, Plaintiff first reported that someone was coming into her cubicle and bothering her. (Id.). Despite Seebert and Hartsell's urging, Plaintiff refused to name the individual. (Id. at 4; Doc. No. 2: Plaintiff's Complaint at 5). Plaintiff did not report any physical contact or describe any specific misconduct. (Doc. No. 22-3 at 4). Seebert and Hartsell suggested that Plaintiff install a mirror in her cubicle so that she could see someone come up from behind her and encouraged her to speak with Human Resources. (Id.). Plaintiff did not go to Human Resources because she wanted to keep her report confidential so that it did not get back to the individual who was bothering her. (Doc. No. 2 at 5). Nonetheless, Seebert brought Plaintiff's allegations to her own supervisor, Bryant. (Id.).

Plaintiff failed to attain 80% of her sales goal in January 2009 and was placed on a PDP on February 23, 2009. (Doc. No. 22-3 at 4). Plaintiff failed to meet this 80% figure again in March 2009 and was placed on a second PDP in April 2009. (Id.). Nine days after being

2

placed on this second PDP, Plaintiff complained to Human Resources Generalist Ebony House ("House") about a "blow-up" between Plaintiff and Bryant during the delivery of the PDP. (Doc. No. 22-1: House Aff. at 3). Plaintiff did not report any sexual harassment or misconduct by Bryant, but merely stated that she was stressed and did not like her job. (Id. at 3-4). House encouraged Plaintiff to take a Leave of Absence or take advantage of the Employee Assistance Program. (Id. at 4).

Plaintiff again failed to meet 80% of her sales goal in April and Defendant placed her on a PIP in May. (Id. at 5). As a result, Plaintiff was required to meet 90% of her sales goal in June or else face further discipline and possible termination. (Id.). One week later, Plaintiff reported to Human Resources Director Sunday Sotomayor ("Sotomayor") that Bryant had inappropriately touched her, reached under her desk while she was seated there to remove something from her trash can, attempted to touch her hair, made a joke about sexual harassment, and "pulled [her] shirt away from [her] body while [she] was on a call to look down [her] shirt at [her] tattoo while [she] was on a call." (Id.; Doc. No. 22-2: Plaintiff's Dep., Ex. 11 at 51). Sotomayor immediately investigated the complaint by interviewing Bryant and any witnesses identified by Plaintiff. (Id.; Doc. No. 22-2: Plaintiff Dep. at 36, 52). Sotomayor reported that none of these witnesses corroborated Plaintiff's version of events. (Doc. No. 22-2 at 35, 52). Therefore, Sotomayor concluded that there was no evidence that Bryant engaged in inappropriate behavior. (Id. at 52). Nonetheless, in May 2009, Bryant was advised to refrain from any involvement in Plaintiff's coaching and development meetings going forward. (Doc. No. 22-1 at 4).

Plaintiff failed to reach the 90% target in June 2009. (Id. at 5, 28). Seebert then met with Plaintiff and Sotomayor. (Id. at 5). Seebert and Sotomayor went over the PIP's

3

requirements with Plaintiff and extended it for another month. (Id.). Seebert testified that she and Sotomayor took Plaintiff's recent complaints into account in deciding not to terminate Plaintiff for her failure to attain the 90% target. (Doc. No. 22-3 at 5). But Seebert and Sotomayor did explain that another failure to meet the 90% requirement could result in termination and encouraged Plaintiff to take a leave of absence if she needed one. (Id.).

Plaintiff did not take leave and met 90% of her monthly goal in July 2009. (Id.). As a result, Plaintiff was taken off of the PIP. (Id.). Plaintiff, however, again failed to reach even 80% of her sales goal in August 2009. (Id.). Defendant then placed Plaintiff on a second PIP on September 18, 2009. (Id.). Plaintiff failed to attain 90% of her sales goal in October 2009. (Id. at 6). Seebert, Sotomayor, and House then decided that termination was appropriate "in light of Ms. Rivers' consistent failure to meet her sales goals." (Id.). Bryant played no role in this decision. (Id.). Plaintiff was fired on October 26, 2009. (Doc. No. 22-1 at 4).

## II. MOTIONS TO COMPEL

On May 2, 2012, Plaintiff filed three motions to compel discovery. (Doc. Nos. 23; 24; 25). Discovery closed on March 6, 2012 and dispositive motions had to be filed by April 5, 2012. (Doc. No. 9 at 1-3). Plaintiff does not allege that her requests pertain to any required supplementation under Federal Rule of Civil Procedure 26(e). (Doc. Nos. 23; 24; 25). Therefore, Plaintiff motions are almost two months late and will be denied. Defendant's motion for summary judgment is ripe for review and there is no need to delay this case for further discovery. Plaintiff's three motions to compel discovery, (Doc. Nos. 23; 24; 25), are **DENIED**.

## III. SUMMARY JUDGMENT

### A. Standard of Review

Summary judgment shall be granted "if the movant shows that there is no genuine

dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A factual dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A fact is material only if it might affect the outcome of the suit under governing law. Id.

The movant has the "initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (internal citations omitted).

Once this initial burden is met, the burden shifts to the nonmoving party. That party "must set forth specific facts showing that there is a genuine issue for trial." Id. at 322 n.3. The nonmoving party may not rely upon mere allegations or denials of allegations in his pleadings to defeat a motion for summary judgment. Id. at 324. Instead, that party must present sufficient evidence from which "a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248; accord Sylvia Dev. Corp. v. Calvert Cnty., Md., 48 F.3d 810, 818 (4th Cir. 1995).

When ruling on a summary judgment motion, a court must view the evidence and any inferences from the evidence in the light most favorable to the nonmoving party. Anderson, 477 U.S. at 255. "'Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial.'" Ricci v. DeStefano, 129 S. Ct. 2658, 2677 (2009) (quoting Matsushita v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)).

B.   Analysis

Plaintiff alleges hostile work environment and retaliatory discharge claims against Defendant. (Doc. No. 2 at 4).

1.   Hostile Work Environment

Title VII prohibits practices that "discriminate against any individual with respect to [her] compensation, terms, conditions, or privileges of employment . . . Such discrimination includes maintaining a . . . hostile work environment." Jordan v. Alternative Resources Corp., 458 F.3d 332, 339 (4th Cir. 2006). "To state a hostile work environment claim, [Plaintiff] must allege that: (1) she experienced unwelcome harassment; (2) the harassment was based on her gender, race, or age; (3) the harassment was sufficiently severe or pervasive to alter the conditions of employment and create an abusive atmosphere; and (4) there is some basis for imposing liability on the employer." Bass v. E.I. DuPont de Nemours & Co., 324 F.3d 761, 764 (4th Cir. 2003).

"The 'severe or pervasive' element of a hostile work environment claim has both subjective and objective components. First, the plaintiff must show that [s]he subjectively perceived the environment to be abusive. Next, the plaintiff must demonstrate that the conduct was such that a reasonable person in the plaintiff's position would have found the environment objectively hostile or abusive." EEOC v. Sunbelt Rentals, Inc., 521 F.3d 306, 315 (4th Cir. 2008) (internal quotations and citations omitted).

The Fourth Circuit has found that this is a high bar and that plaintiffs must "identify situations that a reasonable jury might find to be so out of the ordinary as to meet the severe or pervasive criterion. That is, instances where the environment was pervaded with discriminatory

conduct aimed to humiliate, ridicule, or intimidate, thereby creating an abusive atmosphere." Id. at 316 (internal quotations omitted); see also EEOC v. Fairbrook Medical Clinic, 609 F.3d 320, 328-29 (4th Cir. 2010) (denying summary judgment where supervisor targeted plaintiff with highly personalized comments about her breasts and sex drive designed to demean and humiliate her in front of co-workers and the public); Mosby-Grant v. City of Hagerstown, 630 F.3d 326, 336 (4th Cir. 2010) (denying summary judgment where plaintiff showed that repeated comments about sexual encounters with young women and constant demeaning remarks about women caused her significant emotional distress).

Courts examine the totality of the circumstances in evaluating the question of whether alleged harassment altered the plaintiff's conditions of employment, including: "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; [] whether it unreasonably interferes with an employee's work performance . . . [and] the effect on the employee's psychological well-being." Harris v. Forklift Sys., Inc., 510 U.S. 17, 23 (1993). "[S]imple teasing, off-hand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment." Jordan, 458 F.3d at 339 (quoting Faragher v. City of Boca Raton, 524 U.S. 775, 788 (1998)).

Plaintiff alleges that between June 30, 2008 and April 2009, Bryant:

- grabbed her arm to move her away from her cubicle without asking her first to step away, (Doc. No. 2 at 5);
- touched her on the shoulder, arm, or back ten times in a non-sexual manner, (Id.; Doc. No. 22-2 at 32);
- complimented Plaintiff's hair and attempted to touch it on one occasion before making light of sexual harassment, (Doc. Nos. 2 at 5; 22-2 at 28);

- reached under Plaintiff's desk while she was seated there to take something out of her trash can; (Doc. No. 22-2 at 28);
- "pulled [Plaintiff's] shirt away from [her] [back] while [she] was on a call to look down [her] shirt at [her] tattoo while [she] was on a call." (Doc. No. 22-2 at 32, 51);
- blocked a narrow hallway with his arms and told Plaintiff to walk under him when she attempted to pass, (Doc. No. 2 at 5); and
- cut Plaintiff off when she was speaking on several occasions, (Doc. No. 2 at 5).

Plaintiff alleged that this conduct caused her to emotionally break down, experience exhaustion, feel isolated from her co-workers, lose "countless hours of sleep due to insomnia," gain weight, and develop adult acne. (Doc. No. 2).

The occasional non-sexual touching Plaintiff complains of is not remotely close to establishing the severe and pervasive harassment required for a hostile environment claim. Also, while Bryant may have invaded her personal space in removing something from her trash can while she was seated, there is no evidence that such conduct was designed to "humiliate, ridicule, or intimidate." EEOC v. Sunbelt Rentals, Inc., 521 F.3d at 315. Likewise, one compliment and attempted contact with Plaintiff's hair is insufficient to establish a hostile work environment.

Bryant's alleged blockade of a narrow hallway and direction that Plaintiff go under his arm was a childish tease that does not belong in the workplace. However, such isolated teasing or boorish behavior is not sufficiently serious to be an actionable change in the conditions of Plaintiff's employment. Cf. EEOC v. Xerxes Corp., 639 F.3d 658 (4th Cir. 2011) (granting employer summary judgment despite supervisor's racial slurs); Griffin v. South Piedmont Community College, No. 3:10-cv-412, 2011 WL 3841562, at *5 (W.D.N.C. Aug. 30, 2011) (Cogburn, J.) (granting employer summary judgment despite supervisor's gender-based

comments and "suggestive" winks); Reid-Lamb v. Time Warner Entmt., No. 3:10-cv-77, 2011 WL 1883113, at *5 (W.D.N.C,. May 17, 211) (Whitney, J) (granting employer summary judgment despite supervisor's offensive comments). In Griffin, the court found that a similar incident in which a plaintiff felt trapped by her superior was not actionable where it was not accompanied by any touching or suggestive remarks. 2011 WL 3841562, at *5. Here, Plaintiff does not allege that Bryant accompanied his tease with any touching, suggestive remarks, or anything else that would tend to intimidate or embarrass her. This incident is not severe enough to establish a hostile work environment alone.

Plaintiff's most serious allegation is that Bryant pulled her shirt away from her back while she was on a call to observe her tattoo. While this is clearly inappropriate, it also appears isolated. "[I]solated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment." Jordan, 458 F.3d at 339 (quoting Faragher, 524 U.S. at 788). Plaintiff does not allege that Bryant accompanied this action with any inappropriate comment or attempted to touch Plaintiff in a sexual way. This alleged action, while contemptible, is not "extremely serious," such that it could alone establish a hostile work environment. See id.

Bryant's alleged inappropriate behavior was not severe or frequent enough to constitute actionable harassment. Plaintiff did not allege anything physically threatening and did not present any evidence to support her claims of severe emotional disturbance. Plaintiff did not allege that Bryant made any demeaning remarks about women or suggestive comments toward her. Plaintiff's allegations describe several incidents of unwanted touching of a nonsexual nature and one more serious, but isolated, intrusion of Plaintiff's privacy. However, Plaintiff

does not allege anything severe or pervasive enough to establish her burden to show a hostile work environment. Therefore, Plaintiff has failed to state a hostile environment claim. See Bass, 324 F.3d at 764. Defendant's Motion for Summary Judgment, (Doc. No. 21), is **GRANTED** on this claim.

2. Retaliation

Plaintiff also claims that she was terminated for reporting Bryant's alleged sexual harassment to HR. Plaintiff lacks any direct evidence of retaliation, so the Court must analyze her claim under the burden-shifting framework of McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-05 (1973). Plaintiff bears the initial burden under this framework to establish a prima facie case of retaliation. Id.. "The test for proving *prima facie* retaliatory discharge requires that (1) plaintiff engaged in protected activity, such as filing an EEO[C] complaint; (2) the employer took adverse employment action against plaintiff; and (3) a causal connection existed between the protected activity and the adverse action." Carter v. Ball, 33 F.3d 450, 460 (4th Cir. 1994); see also Laughlin v. Metropolitan Washington Airports Auth., 149 F.3d 253, 259 (4th Cir. 1998) (barring retaliation for "opposing discriminatory practices in the workplace").

> If a prima facie case is presented, the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for the adverse employment action. Assuming the employer meets this burden of production, the McDonnell Douglas framework–with its presumptions and burdens–disappears, and the sole remaining issue is discrimination *vel non.* In other words, the burden shifts back to the plaintiff to prove by a preponderance of the evidence that the employer's stated reasons were not its true reasons, but were a pretext for discrimination. At this point, the burden to demonstrate pretext merges with the ultimate burden of persuading the court that the plaintiff has been the victim of intentional discrimination.

Hill v. Lockheed Martin Logistics Mgmt., Inc., 354 F.3d 277, 285 (4th Cir. 2004) (internal

citations and quotations omitted).

Defendant concedes that Plaintiff engaged in protected activity and that she suffered an adverse employment action when she was fired. (Doc. No. 22 at 18). Defendant argues, though, that Plaintiff cannot show that a causal connection exists between Plaintiff's harassment complaint and her termination. (Id.). Plaintiff made her most recent, and only detailed, harassment complaint on May 22, 2009. Despite being up for termination a month later for failing to meet sales quotas, Defendant gave Plaintiff another chance to improve her numbers. This strongly suggests that Plaintiff's eventual termination had nothing to do with her sexual harassment complaints. It was not until Plaintiff again failed to meet the requirements of a PIP in October 2009 that she was terminated on October 26, 2009. A five month gap between Plaintiff's complaint and her termination is too long to be evidence of causation. See King v. Rumsfeld, 328 F.3d 145, 151 n.5 (4th Cir. 2003) (finding two month period "sufficiently long so as to weaken significantly the inference of causation between the two events"). This is especially true where some intervening conduct justifies termination. Ford v. G.E. Lighting, LLC, No. 5:03-cv-24, 2004 WL 1280679, at *2 (short time between employee's protected complaint to management and his firing two months later not indicative of retaliation where he got in a fight at work between the complaint and firing). Here, Plaintiff failed to meet her sales goals three times after making her last complaint of sexual harassment to HR. Defendant counseled Plaintiff, gave her an opportunity to take a leave of absence, and gave her two more chances to improve her sales numbers before eventually terminating her employment. Plaintiff has not presented any evidence of a causal connection between her complaint to HR and her eventual termination five months later. Plaintiff has failed to establish a prima facie case of a

retaliatory discharge.

Even if Plaintiff could have established a prima facie case, her case would still be dismissed because she failed to show that Defendant's stated reason for firing her was pretext. Defendant argues that it fired Plaintiff because of her consistent failure to meet sales objectives. Plaintiff's sales shortcomings are well documented. Defendant showed that it took Plaintiff's complaints seriously–investigating them fully and removing Bryant from her sales and development coaching sessions even though Defendant determined that Plaintiff's claims were baseless. Defendant then elected not to fire Plaintiff a month later despite her failure to meet the requirements of a PIP. Plaintiff has not presented any evidence that her termination was a result of anything other than her consistent failure to meet Defendant's sales expectations. Defendant's Motion for Summary Judgment, (Doc. No. 21), is **GRANTED** on this claim as well.

## V.    CONCLUSION

Plaintiff's hostile work environment claim must be dismissed because she failed to show that the alleged harassment was sufficiently severe or pervasive to alter the conditions of employment and create an abusive atmosphere. Her retaliation claim must be dismissed because she failed to establish a prima facie case of retaliation in that she presented no evidence of a causal link between her protected activity and her termination.

**IT IS, THEREFORE, ORDERED** that:

1. Plaintiff's three motions to compel discovery, (Doc. Nos. 23; 24; 25), are **DENIED**;

2. Defendant's Motion for Summary Judgment, (Doc. No. 21), is **GRANTED**; and

3. Plaintiff's case is **DISMISSED**.

Signed: June 20, 2012

*[signature]*

Robert J. Conrad, Jr.
Chief United States District Judge